# HANG & ASSOCIATES, PLLC
ATTORNEYS AT LAW
136-18 39th Avenue, Suite 1003
Flushing, New York 11354

January 23, 2019

Lorena P. Duarte, Esq.
Tel : (718) 353-8522
Fax: (718) 353-6288
Email: lduarte@hanglaw.com

**VIA E-Mail:**
Hon. Judge Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza E
Brooklyn, NY 11201

        **RE: Case No. 18-cv-1118**
        **Shirin Bakul v. A1 Precious LLC, d/b/a Dunkin Donuts, et al.**

Dear Judge Weinstein:

    Our office represents Plaintiff Shirin Bakul ("Plaintiff," "Plaintiff Bakul," or "Mrs. Bakul") and together with Defendants, A1 Precious LLC d/b/a Dunkin Donuts, Neeha Ahluwalia, Narinder Ahluwalia, and Masud Prodyham, incorrectly named in the case as Neha Doe, Adsar Doe a/k/a A.D. and Masut Doe" (collectively, "Defendants") apologize to the Court for the delay in the submission of the settlement agreement as it was due on December 28, 2019. Due to the holidays and scheduling conflicts, the parties were delayed in its review and execution. We respectfully request that Your Honor approve the settlement reached in this matter. A copy of the proposed settlement agreement is annexed herein as **Exhibit A**.

    I.    **Plaintiff's Allegations and Defendants' Responses**

    This action was originally brought by Plaintiff for alleged failure to pay minimum wages, unpaid overtime wages, unpaid "spread of hours" premium, failure to give a wage notice at time of hire, and failure to provide paystubs pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 et seq., and the New York Labor Law ("NYLL").

    Plaintiff Bakul alleged that she was formerly employed as a food preparer, customer service/cashier and cleaning person for A1 Precious LLC d/b/a Dunkin Donuts, a donut franchise restaurant owned by Defendants with two locations: 3402 Union Street in Flushing, New York and 10962 Francis Lewis Boulevard in Jamaica, New York. Defendants hired Plaintiff from on or about December 23, 2017 to January 15, 2018. Plaintiff alleges that from time of hire until end of employment, she worked at both locations between six (6) to twelve (12) hours per day. For the week of December 23, 2018 until December 31, 2018, Plaintiff worked forty-one and one half

(41.5) hours. For the weeks of January 1, 2018 until January 15, 2018, Plaintiff worked fifty-seven (57) hours per week. During her time employed by Defendants, Plaintiff was to be paid the corresponding minimum wage rate and paid weekly; however, Defendants never paid Mrs. Bakul her wages owed. When Mrs. Bakul requested payment, she was repeatedly ignored. When Mrs. Bakul expressed concern over not receiving her first week's pay, several co-workers stated that Defendants frequently delaying paying them their wages. They stated that this has caused other workers to leave, but they need their job and are afraid to say anything. They also did not receive wage notices at time of hire. A collective action was sought because Plaintiff alleged that other employees in the same position experienced the same non-payment or delayed payments as she had.

Defendants have advised that the hours Plaintiff claims to have worked are exaggerated and incorrect and further dispute that Plaintiff ever brought her concerns about her wages to the attention of those responsible payroll. Moreover, Defendants dispute that any other employee has not been timely paid or has not been paid, at all.

In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiff's wage and hour claims. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining.

## II. Settlement Negotiations

At the inception of the litigation, Plaintiff submitted a settlement demand in the amount of approximately $12,000, inclusive of attorney's fees. The demand was wholly based on Plaintiff's maximum possible recovery if she were able to establish each and every claim. Defendants noted that the demand included liquidated damages, which Defendants contend could not be proven, an improper calculation of wage theft act damages, and an unreasonable amount of attorneys' fees. The Parties engaged in good faith settlement discussions and the Parties agreed on the settlement amount of $8,500.00 in order to avoid potentially significant and unanticipated burdens and expenses in establishing their respective positions.

The gross settlement amount is $8,500.00, inclusive of Plaintiff's counsel's attorneys' fees and costs of $3,440.00 with settlement payments to Plaintiff Bakul of $5,060.00. The attorney's fees and costs are allocated as follows: $2,530.00 for fees, and $910.00 for costs. This reflects a reasonable compromise between the parties' dispute over Defendants' alleged failure to pay minimum wages, unpaid overtime wages, unpaid "spread of hours" premium pay, failure to give a wage notice at time of hire, and failure to provide paystubs. This amount also considers the costs and the uncertainty of protracted litigation, in particular significant concerns about the case receiving certification as a collective action. This settlement was reached after extensive negotiations between the parties and the parties agree that the settlement is fair and reasonable.

## III. The Settlement is Fair and Reasonable

The Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 2015 WL 4664283 (2d Cir. 2015) provides that stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the Department of Labor. An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of

finding a settlement fair," as "the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

It is apparent that the Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the Parties. This is because the Agreement: (1) enables the Parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (2) is the product of arm's-length bargaining between experienced labor and employment counsel which was completely devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

### IV.     Plaintiff's Application for Attorney's Fees Should Be Approved

The settlement agreement also provides for reasonable attorneys' fees. Pursuant to our firm's agreement with the Plaintiff the firm will be reimbursed $910.00 in filing fees, costs, and retain 1/3 of the remaining settlement amount of $2,530.00, which comes to $3,440.00 as set forth in Paragraph 2 of the Settlement Agreement. Based on my experience in handling FLSA and NYLL matters, this is a standard and acceptable arrangement for attorneys' fees.

Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). This case is distinguishable from the case cited in *Cheeks*, wherein that settlement agreement was denied because the attorneys' fees were set at between 40 and 43.6 percent of the total payment, without justification to support the higher fees. *Cheeks v. Freeport Pancake House, Inc.*, 796 F3d 199, 206 (2d Cir 2015) (*citing Lopez v Nights of Cabiria, LLC*, 96 F Supp 3d 170, 181-82 (SDNY 2015). Therefore, as 1/3 is standard practice in FLSA claims, it is a fair number for this matter as well.

Hang & Associates, PLLC ("Hang & Associates") represents both plaintiffs and defendants in litigating claims arising out of the employment relationship, including claims for employment discrimination, wage and hour issues, and contact disputes. Mr. Jian Hang, Esq., principal attorney of Hang & Associates, has over ten years of experience in the field of employment law. His office currently represents plaintiffs with wage & hour claims in more than 100 lawsuits in federal and state courts and is well respected in the Flushing community. Prior to forming Hang & Associates

3

Mr. Hang practiced labor law at Epstein, Becker & Green, P.C. Hang & Associates focuses exclusively on employment law. Given his years of experience, and the practice's specialized focus on employment law, Jian Hang typically charges an hourly rate of $375. I, Lorena P. Duarte, Esq., lead attorney on this case, have experience in employment, family, real estate, and mass tort litigation. Being fluent in Spanish and French, I specialize in representing the Latino community in these cases both on plaintiff and defendant side. Currently, I independently handle a case load of 30+ cases which includes client intake, discovery, depositions, motion practice, settlement and possible trial and bill an hourly rate of $275. Hang & Associates spent a considerable amount of time on this matter, and had it been billing hourly, it would have incurred fees and costs of $7,224.50.

### V. Conclusion

For the foregoing reasons, Counsel for all parties respectfully submit that the Settlement Agreement is fair and reasonable, and therefore jointly request that the Court approve or so order the Settlement Agreement.

Respectfully submitted,

*/s/ Lorena P. Duarte*
Lorena P. Duarte, Esq.